UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA BOZARTH,
etc.,

      Plaintiff,

v.                  CASE NO.  8:08-CV-2075-T-17EAJ

SUNSHINE CHEVROLET-
OLDSMOBILE OF TARPON
SPRINGS, INC., d/b/a
FERMAN BMW,

      Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 17  Motion for Summary Judgment
Dkt. 18  Deposition - Bozarth
Dkt. 19  Deposition - Cruea
Dkt. 20  Deposition - Elmendorf
Dkt. 21  Deposition - Gulotta
Dkt. 22  Affidavit - White
Dkt. 25  Response

The Complaint in this case includes Plaintiff Jessica Bozarth n/k/a Jessica Pennington's claim for discrimination under Title VII, as amended by the Pregnancy Discrimination Act (Count I), and Plaintiff's claim for discrimination under the Family Medical Leave Act (Count II).

The Court notes that Plaintiff Bozarth admits that the FMLA claim is a retaliation claim only, as there is insufficient evidence to establish an FMLA interference claim.

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

II. Statement of Facts

1. Plaintiff Jessica Bozarth n/k/a Jessica Pennington, was hired in August, 2006 as an assistant to Victor Figueroa, a Service Advisor at Defendant Sunshine Chevrolet-Oldmobile, Inc., d/b/a Ferman BMW.

2. Defendant's Employee Handbook specifies Defendant's anti-discrimination policy, and identifies how complaints may be made. (Bozarth Deposition, Exh. 18-9).

3. Plaintiff Bozarth was promoted to Service Advisor on October 10, 2006.

4. Plaintiff Bozarth was given a raise in pay on March 4, 2007.

5. Plaintiff Bozarth testified that she informed Service Manager John Elmendorf that Plaintiff was pregnant in March, 2007.

6. Plaintiff Bozarth was transferred from Service Advisor to Warranty Administration/Payroll in April, 2007. Plaintiff Bozarth was then classified as a "General Clerical Employee." Plaintiff Bozarth was in training to become a warranty administrator.

7. Plaintiff Bozarth testified that she did not ask Service Manager Elmendorf why she was being transferred because he said Plaintiff's pay would not change. (Bozarth Depo., p. 34, l. 12-13). Plaintiff Bozarth denied telling John Elmendorf she

did not like service advisor work, or that it was not taking her where she wanted to go. (Bozarth Depo., p. 38, l. 8; p, 40, l. 13). Plaintiff Bozarth denied telling Amanda Cruea Plaintiff wanted to work in warranty administration. (Bozarth Depo., p. 50, l. 15).

8. Plaintiff Bozarth's pay was changed in July, 2007.

9. Plaintiff Bozarth testified Plaintiff complained about transfer and later change in pay to Service Manager John Elmendorf, but did not relate her complaints to pregnancy discrimination. (Bozarth Deposition, p. 84, l. 1-15). Plaintiff Bozarth testified that she did not complain to anyone else about Plaintiff's change in pay. (Bozarth Deposition, p. 87, l. 11-13).

10. Plaintiff Bozarth submitted her request for FMLA leave on October 29, 2007, for twelve weeks leave, from 11/19/2007 to 2/18/2008.

11. Plaintiff Bozarth began her leave on 11/12/2007, taking an additional week of leave, using "vacation time."

12. After Plaintiff's leave started, another employee filled in for Plaintiff's absence. In order to keep up with warranty coding, Defendant then hired Melanie McGill, an experienced warranty administrator, to do warranty coding. Defendant planned that there would then be three employees in the Warranty Administration/Payroll Department. (Elmendorf Deposition, p. 42,l. 17p. 43, l. 3; Cruea Deposition, p. 14, l. 18-22).

13.   During her leave, Plaintiff Bozarth knew Plaintiff must pay insurance premiums to maintain health insurance.   When Plaintiff Bozarth did not remit payment, Defendant paid the premiums out of Plaintiff's accrued vacation, to avoid cancellation.   Plaintiff Bozarth testified that she was aware of procedure for adding a dependent to her policy: "after a 'life-changing event' such as marriage, birth, death or divorce."(Bozarth Deposition, p. 81, l. 6-14).

14.   One week prior to her return to work, Plaintiff Bozarth met with her supervisor, Service Manager John Elmendorf. Plaintiff Bozarth testified that John Elmendorf told her that her position had been eliminated.

15.   After her discussion with John Elmendorf, Plaintiff Bozarth inquired about other positions at Defendant's Business Development Center.   Plaintiff Bozarth was not interested in the available position due to the hours and location.

16.   Plaintiff Bozarth returned to work on 2/18/2008. Plaintiff's desk was in different office than prior to Plaintiff's leave, and was across from the Warranty Administration office.   Plaintiff Bozarth was assigned to cover for cashiers, and trained to "batch out" the cash register. Plaintiff testified that when Plaintiff asked other employees for work, no one had any to give her.   Plaintiff Bozarth testified that Service Manager John Elmendorf prevented others from giving Plaintiff work to do. (Bozarth Depo., p. 68, l. 19-24; p. 72, l. 2-12).

5

17. Service Manager John Elmendorf testified that he told Plaintiff to be patient, and learn cashier's duties until additional work became available. Defendant continued to employ Plaintiff as a General Clerk, the same position Plaintiff held before Plaintiff want on leave, and to pay Plaintiff $11.00 per hour.

18. On March 3, 2008, two weeks after returning to work after her FMLA leave, Plaintiff Bozarth left work without informing anyone at dealership. Plaintiff Bozarth contacted General Manager Peter Gulotta, who offered Plaintiff a greeter position, but Plaintiff declined to accept it. In her deposition, Plaintiff testified:

> "I was just-I was stressed out. I was just
> tired of all the stuff that was going on. I
> mean, basically, I just felt like they were
> forcing me to quit."

(Bozarth Deposition, p. 82, l. 16-19).

19. Plaintiff Bozarth filed her Charge of Discrimination on March 10, 2008, alleging gender discrimination in violation of Title VII and Ch. 760, Fla. Stat.

20. After Plaintiff Bozarth received Notice of Right to Sue, Plaintiff Bozarth commenced this case on October 17, 2008.

III. General Principles

A. Pregnancy Discrimination

The same framework used to analyze sex discrimination claims under Title VII applies to pregnancy discrimination claims. See

Armindo v. Padlocker, Inc., 209 F.3d 1318, 1320 (11th Cir. 2000).

1.  Direct Evidence

    Direct evidence is "evidence, which if believed, proves the
existence of a fact in issue without inference or presumption."
Carter v. City of Miami, 670 F.2d 578, 581 (11th Cir. 1989).
If an employee presents direct evidence of discriminatory intent,
the employer must prove that the same employment decision would
have been made absent any discriminatory intent. Young v. General
Foods Corp., 840 F.2d 825, 828 (11th Cir. 1998).

2.  Circumstantial Evidence

    In the absence of direct evidence, the Court applies the
burden-shifting framework established in  McDonnell Douglas Corp.
v. Green, 411 U.S. 792 (1973).  An employee claiming pregnancy
discrimination must show: 1) she was a member of a protected
class; 2) she was qualified for the position;  3) she was
subjected to an adverse employment action; and 4) she suffered
from differential application of work or disciplinary rules.
Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir.
1999).

    An "adverse employment action" means "a serious and material
change in the terms, conditions or privileges of employment,"
Davis v. Town of Lake Park 245 F.3d 1232, 1239 (11th Cir. 2001),
such as an ultimate employment decision, including termination,
demotion, failure to hire, or failure to promote.

A plaintiff satisfies the fourth prong of the McDonnell Douglas framework by showing that her employer treated similarly situated employees outside her protected class more favorably. Brockman v. Avaya, Inc., 545 F. Supp.2d 1248, 1255 (M.D. Fla. 2008). The comparator must be similarly situated to the employee "in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11ᵗʰ Cir. 1997). If an employee does not establish the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination exists. Id., 115 F.3d at 1562.

If the employee establishes a prima facie case of pregnancy discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is "exceedingly light"; the employer must produce evidence that could allow a rational fact finder to conclude that its actions were not motivated by discriminatory action. If the employer articulates a legitimate, non-discriminatory reason for the adverse employment action, the employee must then show that the employer's proffered reason is a pretext for prohibited discrimination. To show pretext, the employee must present evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11ᵗʰ Cir. 1997).

B.  FMLA Discrimination

The FMLA entitles an eligible employee to take up to twelve weeks of unpaid leave from work in any twelve-month period

8

because of the birth of a child, in order to care for the child. If the employee returns to work at the end of the leave period, the employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or, if the previous position is no longer available "to be returned to an equivalent position with equivalent benefits, pay and other terms and conditions of employment." 29 U.S.C. Sec. 2614(a)(1). The employee is entitled to reinstatement even if the employee was replaced or the employee's position was restructured to accommodate the employee's absence." 29 C.F.R. Sec. 825.214.

To state a claim for FMLA retaliation, an employee must demonstrate that the employer intentionally discriminated against the employee for exercising FMLA rights. 29 U.S.C. Sec. 2615(a)(2); 29 C.F.R. Sec. 825.220(c). An employee bringing a retaliation claim faces the burden of showing that her employer's actions were "motivated by an impermissible retaliatory or discriminatory motive." Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001).

In the absence of direct evidence of FMLA retaliation, the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is applied. An employee claiming FMLA retaliation must show that: 1) she engaged in statutorily protected activity; 2) she was subjected to an adverse employment action; and 3) the adverse employment action was causally related to the statutorily protected activity. Martin v. Brevard County, 543 F.3d 1261, 1267, 1268 (11th Cir. 2008).

Statutorily protected activity includes taking or requesting to take leave for which the employee is eligible under the FMLA. Morehardt v. Spirit Airlines, Inc., 174 F.Supp.2d 1272, 1281 (M.D. Fla. 2001). An adverse employment action is any ultimate employment decision, such as termination or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives an employee of employment opportunities, or adversely affects an employee's status. Martinez v. Mercedes Home Realty, Inc., 2005 WL 2647884 at *4 (M.D. Fla. 2005).

To demonstrate a causal relationship, an employee must show that the protected activity and the adverse employment action were not completely unconnected, that the decision maker was aware of the protected activity at the time of the adverse employment action, and that the protected activity and the adverse employment action were "very close" in proximity. Brungart v. Bellsouth Communications, Inc., 231 F.3d 791, 799 (11th Cir. 2000).

If the employee establishes a prima facie case of FMLA retaliation, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. Martin v. Brevard County, 543 F.3d 1267, 1268 (11th Cir. 2008). If the employer articulates a legitimate non-retaliatory reason, the employee must then show that the employer's proffered reason is a pretext for prohibited retaliation. Id., 543 F.3d at 1268.

IV.   Defendant's Motion

A.   Count I - Pregnancy Discrimination

Defendant argues that the only adverse employment action was Plaintiff's alleged pay decrease.  When Plaintiff Bozarth returned to work, Plaintiff had the same status as prior to Plaintiff's leave, "General Clerical Employee."  Defendant argues that the isolated remark of John Elmendorf was not an adverse employment action.  Defendant further argues that Plaintiff Bozarth has not shown that Defendant treated similarly situated non-pregnant employees more favorably.

Defendant contends that Defendant has proffered a legitimate non-discriminatory reason for Defendant's actions, which Plaintiff has not shown to be pretextual.  Defendant argues that the evidence establishes that Plaintiff's job was not eliminated upon her return; Plaintiff Bozarth was given same position at the same pay and benefits.  Defendant argues that the evidence shows that Melanie McGill was not hired to replace Plaintiff Bozarth, but to help Warranty Administrator Amanda Cruea and Plaintiff with increased workload.

Defendant argues that Defendant did not cancel the health insurance for Plaintiff's child; the benefits lapsed because Plaintiff Bozarth did not add her child to the policy during the 30 day period enrollment period following the child's birth.

B.   Count II - Retaliation Claim

Defendant argues that there is no genuine issue of any material fact as to Plaintiff's claim for FMLA retaliation.

11

Defendant's intention was that all three employees would continue to work in Warranty Administration/Payroll. Defendant has established that Plaintiff was reinstated to the same or an equivalent position upon return from FMLA leave. Defendant further argues that the isolated comment by Service Manager Elmendorf did not affect the terms and conditions of Plaintiff's employment. Defendant argues that Defendant did not cancel the health insurance for Plaintiff's child; Plaintiff did not add the child to the policy within the required time period.

Defendant argues that Plaintiff's claim for liquidated damages must be dismissed.

As to constructive discharge, Defendant argues that the evidence does not show a genuine issue of material fact in dispute. Constructive discharge is to be analyzed based on an objective standard, not Plaintiff's subjective feeling. See Hipp v. Liberty Nat'l Life Ins., 252 F.3d 1208, 1231 (11th Cir. 2001). An employee must show that her employer made her working conditions so intolerable that a reasonable person in her position would have felt compelled to resign.

Defendant argues that, as a matter of law, the conduct alleged by Plaintiff is insufficient to meet the high hurdle required to establish constructive discharge. Defendant further argues that Plaintiff did not provide Defendant with notice of her concerns in sufficient time to address those concerns. See Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987). Plaintiff resigned two weeks after returning from FMLA leave, which did not give Defendant sufficient time to reintegrate Plaintiff. Defendant argues that Plaintiff did not

12

complain of the transfer, the comment, or cancellation of health insurance benefits while Plaintiff was employed by Defendant.

IV. Plaintiff's response

A. Count I

Plaintiff Bozarth contends that Plaintiff has established a prima facie case of pregnancy discrimination. Plaintiff argues that the adverse employment actions included demotion with reduction in pay, and/or constructive discharge. Plaintiff argues that Plaintiff has established pervasive deterioration of the conditions of her employment. Plaintiff further argues that Plaintiff was subjected to ongoing humiliating behavior, not an isolated remark.

Plaintiff argues that Plaintiff complained of the transfer and pay reduction to Service Manager Elmendorf. Upon Plaintiff's return to work, when Plaintiff asked for something to do, no work was given to her, and Service Manager Elmendorf prevented others from giving Plaintiff work to do. Plaintiff points to other evidence of discrimination, including the timing of the changes Plaintiff's employment. Plaintiff argues that there was a significant change in Plaintiff's job duties upon Plaintiff's return from FMLA leave.

Plaintiff concedes that Defendant has offered a legitimate, non-discriminatory reason for the adverse employment actions. Plaintiff contends that Defendant's reason is pretextual, and there is sufficient evidence on which a fact finder could find Defendant's non-discriminatory reason unworthy of credence.

B.  FMLA Retaliation

Plaintiff Bozarth argues that Plaintiff has shown that
Plaintiff engaged in statutorily protected action, that Plaintiff
suffered adverse employment action causally related to protected
activity.

While Defendant has offered a legitimate, non-discriminatory
reason for the adverse employment action, Plaintiff contends that
Defendant's legitimate, non-discriminatory reason is pretextual.
Plaintiff argues that Defendant did not give Plaintiff any work,
and told other employees Plaintiff was not to be given work.
Plaintiff argues that Defendant's lack of work or business needs
is merely a pretext for intentionally discriminating conduct.
Plaintiff argues that liquidated damages are appropriate.

V.  Discussion

The Court has found no direct evidence of discrimination or
retaliation, and will consider this case under the McDonnell-
Douglas framework.

A.  Count I - Pregnancy Discrimination

1.  Prima Facie Case

Defendant does not dispute that Plaintiff was a member of a
protected class and qualified for all positions Plaintiff held at
the dealership.  Defendant disputes whether Plaintiff has
established an adverse employment action, arguing that only the
pay decrease amounts to an adverse employment action.

14

An "adverse employment action" is broadly defined and includes demotions, discharge, refusal to hire, refusal to promote, and reprimands. Goffer v. Marbury, 956 F.2d 1045, 1049 n.1 (11th Cir. 1992). Any other conduct that "alters the employee's compensation, terms, conditions or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee qualifies as an adverse employment action. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Constructive discharge negatively affects an employee's job status and is therefore an adverse employment action. Meeks v. Computer Associates Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). Where working conditions are so intolerable that a reasonable person would have felt compelled to resign, the employer's action is an adverse employment action. See Durley v. APAC, Inc., 236 F.3d 651, 658 (11th Cir. 2000). A transfer to a less desirable position in terms of pay or eligibility for pay increases is an adverse employment action because it is equivalent to a demotion. McCabe v. Sharrett, 12 F.3d 1558 (11th Cir. 1994).

In considering whether an employer's actions constitute an adverse employment action, the Court considers the employer's actions individually and collectively. Shannon v. Bellsouth Telecomms., 292 F.3d 712, 716 (11th Cir. 2002).

A. Transfer and Change in Pay

Defendant contends Plaintiff wanted the transfer; Plaintiff's testimony is in direct conflict. Plaintiff contends that Plaintiff did not object because Plaintiff was led to believe Plaintiff's pay would not change. Plaintiff's

15

compensation changed two months after the transfer.

A causal connection can be shown by temporal proximity. It is undisputed that the transfer and change in compensation took place after the decisionmaker, Service Manager Elmendorf, was notified of Plaintiff's pregnancy. The Court recognizes that Plaintiff Bozarth could have complained of the change in compensation, and the transfer, by availing herself of the process set forth in Plaintiff's Employee Handbook. Plaintiff is pursuing her claim of discrimination based on the presence of tangible employment action brought about by Plaintiff's supervisor, not based on a hostile work environment. The Faragher-Ellerth defense does not apply to employer liability for tangible employment actions.

For purposes of the disposition of this motion, the Court finds that the transfer and change in pay were adverse employment actions.

B.  Constructive Discharge

Discrimination that alters the terms and conditions of employment can be brought about in two ways. One way is through a tangible employment action, such as a pay decrease, demotion or termination. Hulsey v. Pride Rests, LLC, 367 F.3d 1238, 1245 (11th Cir. 2004). The other way is through creation of a hostile work environment caused by harassment that is severe or pervasive enough to alter the terms and conditions of work. The Court considers Plaintiff's alleged constructive discharge as an additional adverse employment action, not as an alternative theory to a tangible employment action.

16

At the summary judgment stage, the only issue is whether the evidence Plaintiff has put forward creates a genuine issue of material fact as to the alteration of the terms and conditions of Plaintiff's employment as a result of Defendant's conduct.

Constructive discharge can be viewed as an aggravated form of "hostile work environment." The facts alleged for constructive discharge must be so intolerable that a reasonable person would be forced to quit. To be actionable under Title VII, a hostile work environment must be both "objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so. Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

In assessing whether the alleged discriminatory conduct is objectively severe and pervasive, the Court must consider: 1) the frequency of the conduct; 2) the severity of the conduct; 3) whether the conduct was physically threatening and humiliating or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with the employee's work performance. Faragher, 524 U.S. at 787-788. In considering these factors, the Court uses a totality of the circumstances approach, instead of requiring proof of each factor individually. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all of the circumstances.'" Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998).

Conduct is "frequent" where there are repeated incidents of verbal harassment [or other conduct] that continue despite the

17

employee's objections. Miller, 277 F.3d at 1276. Conduct is "severe" when the work atmosphere is "permeated with discriminatory intimidation, ridicule and insult, not where there is mere utterance of an...epithet. Id., at 1276-1277.

The Court recognizes that there were a number of discrete events over a period of time that Plaintiff did not find to be pleasant. Plaintiff Bozarth testified that Plaintiff felt humiliated. These events included the unwanted transfer, with an unwanted change in pay, an offensive remark by Service Manager Elmendorf, and lack of job duties (Bozarth Deposition, p. 76, l. 14-20), a return to employment that was different in some respects than Plaintiff's employment before taking an approved leave of absence, and the offer of employment that required Plaintiff to wear a dress. However, the Court does not consider Plaintiff's subjective feelings toward her employer. Hipp v. Liberty National Life, 252 F.3d at 1231.

Defendant's conduct was not constant, but intermittent, nor was it physically threatening. Defendant's conduct was, for the most part, not humiliating. Until the final two-week period of Plaintiff's employment, Defendant's conduct did not interfere with Plaintiff's work performance. During that two week period, Plaintiff was given training in a new area, but Plaintiff did not have enough work to do. Plaintiff alleges that when Plaintiff sought other work, other employees were told not to give Plaintiff work to do. Plaintiff testified that she "got tired of it" (Bozarth Deposition, p. 76, l. 6-9) and telephoned her resignation to General Manager Peter Gulotta.

In <u>Garner v. Wal-Mart Stores, Inc.</u>, 807 F.2d 1536 (11th Cir.
1987), the Eleventh Circuit Court of Appeals suggests that the
response of a reasonable employee to conduct the employee
perceives to be discriminatory is to lodge a complaint with a
manager, and, if a position similar to the position occupied by
the employee before an approved leave is not made available
within a reasonable time, to file an EEOC complaint for a
discriminatory demotion. In this case, Plaintiff elected to
leave, and telephoned in her resignation. After considering the
totality of the circumstances, the Court concludes as a matter of
law that there was no constructive discharge. The practices
complained of were not severe and pervasive, and a reasonable
employee would not have felt compelled to resign. Where an
employee does not allow sufficient time for the employer to
correct the situation, the employee will not have a claim for
constructive discharge. <u>See</u> <u>Kilgore v. Thompson & Brock</u>
<u>Management, Inc.</u>, 93 F.3d 752 (11th Cir. 1996). Therefore, the
adverse employment action is limited to the alleged transfer with
a change in pay.

C. Comparators

To establish a <u>prima</u> <u>facie</u> case under Title VII, Plaintiff
must show her employer treated similarly situated employees
outside her classification more favorably than herself. To make
a comparison of Plaintiff's treatment with other employees,
Plaintiff must show that she and the other employees were
similarly situated in all relevant respects. If a plaintiff does
not show the existence of a similarly situated employee, summary
judgment is appropriate where no other evidence of discrimination
is present. <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir.

1997).

Plaintiff has offered no evidence of a similarly situated and similarly mistreated employee. Plaintiff argues that Plaintiff has offered other evidence of discrimination: 1) the timing of Plaintiff's transfer and pay cut; 2) upon return from FMLA leave, Plaintiff was told her job was eliminated and Plaintiff sought other jobs; 3) the lack of job duties resulted in loss of prestige and opportunity; and 4) Plaintiff was ridiculed by General Manager Elmendorf's comment.

After consideration, for purposes of this motion, the Court concludes that Plaintiff Bozarth has established a prima facie case.

B. Legitimate Non-Discriminatory Reason

Plaintiff concedes that Defendant has proffered a legitimate, non-discriminatory reason for the alleged adverse employment actions.

C. Pretext

Once an employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the presumption of discrimination "drops from the case," and the plaintiff must demonstrate that the employer's proffered reason was not the true reason for the adverse employment action. A plaintiff may demonstrate pretext directly, by persuading the Court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation

Case No. 8:08-CV-2075-T-17TBM

is unworthy of credence.

To establish pretext, a plaintiff must come forward with evidence, including previously produced evidence establishing her prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). The evidence must be "significantly probative" as to the issue of pretext. Mayfield v. Patterson Plumbing Co., 101 F.3d 1371, 1376 (11th Cir. 1996). A plaintiff's subjective opinion, "without supportive evidence, is not sufficient to establish pretext." See Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989) A plaintiff cannot succeed in establishing pretext by simply quarreling with the wisdom of [her] employer's decision. Chapman, 229 F.3d at 1030. In Chapman, the Eleventh Circuit Court of Appeals states:

> Federal Courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practice, no matter how high-handed a firm's managers, the...[law] does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior...[A]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a retaliatory reason.

Chapman, 229 F.3d at 1030.

A plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its

decision should not be believed, but it is not necessary for a plaintiff to prove that the articulated reason for the adverse employment action is false.

A plaintiff trying to show pretext based on a defendant's dishonest belief of the grounds a defendant has given for his decision does not succeed by presenting evidence that the defendant was mistaken about the facts upon which the defendant based his alleged non-discriminatory decision. Instead, a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which the defendant based the allegedly non-discriminatory decision. Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002); Silvera v. Orange Cty. School Bd., 244 F.3d 1253, 1260 (11th Cir. 2001).

In this case, Service Manager John Elemndorf testified that he transferred Plaintiff Bozarth from Service Advisor to the Warranty Administration/Payroll Department because Amanda Cruea and Jessica Bozarth informed him Plaintiff wanted to work in the Warranty Administration/Payroll Department. (Elmendorf Deposition, p. 25, l. 9-14). Service Manager Elmendorf further testified that he discussed the change in pay and promotion opportunity in that department with Plaintiff. (Elmendorf Deposition, pp. 32-41). Plaintiff Bozarth's signature appears on the forms that document the transfer and the change in pay. (Bozarth Deposition, Exhibits).

Plaintiff Bozarth offers her own testimony that conflicts with the testimony of Service Manager Elmendorf and Amanda Cruea. Plaintiff points to other conduct in order to establish pretext.

22

However, the other conduct does not throw doubt legitimate, non-discriminatory reason for the alleged adverse employment action, that Defendant believed Plaintiff wanted the transfer. Plaintiff accepted the transfer without complaint and only objected when Plaintiff's pay was changed. At that time, Plaintiff Bozarth's objection did not connect the change in pay with pregnancy discrimination, and Defendant never had the opportunity to investigate while Plaintiff was still employed by Defendant. Before her FMLA leave, Plaintiff Bozarth was aware that another employee was being trained to work in Plaintiff's position while Plaintiff was on leave. As it happened, that employee resigned and Defendant hired another person to work during Plaintiff's absence. (Bozarth Deposition, p. 66, l. 15-p. 68, l. 4). When Plaintiff returned from FMLA leave, Plaintiff received the same pay and benefits, and was a clerical employee in the Warranty Administration/Payroll Department. An isolated comment by Plaintiff's supervisor does not show that Defendant did not honestly believe that Plaintiff wanted the transfer. This is not a case in which Defendant deviated from Defendant's internal procedures, or gave shifting reasons for Defendant's conduct.

After consideration, the Court concludes that Plaintiff has not established pretext upon which the trier of fact could find that Defendant did not honestly believe that Plaintiff Bozarth requested the transfer. The Court therefore grants Defendant's Motion for Summary Judgment as to Count I.

B. Count II - FMLA Retaliation

Plaintiff Bozarth engaged in statutorily protected activity

when Plaintiff Bozarth took FMLA leave for the birth of her child. It is undisputed that Plaintiff Bozarth returned to work as a General Clerical Employee in the Warranty Administration/Payroll office, with the same pay and benefits, upon her return from FMLA leave.

Plaintiff has established a prima facie case of FMLA retaliation under the McDonnell Douglas burden-shifting framework. Therefore, a presumption of retaliation arises. Defendant has articulated a legitimate, non-retaliatory reason for Defendant's conduct. The burden shifts to Plaintiff to establish that the legitimate, non-retaliatory reason was pretextual. Plaintiff must demonstrate that Defendant intentionally retaliated against Plaintiff based on Plaintiff's FMLA leave.

The Court has already determined that there was no constructive discharge. Under the FMLA, an employee is entitled, upon return from leave, to be restored to the position of employment held by the employee when the leave commenced, or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. See 29 U.S.C. Sec. 2614. An "equivalent position" is one which is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility and authority. See 29 C.F.R. Sec. 825.215(a). However, the requirement that an employee be restored to the same or equivalent job with the same or equivalent pay does not extend to de minimis, intangible, or unmeasurable aspects of the job. See

24

Case No. 8:08-CV-2075-T-17TBM

29 C.F.R. Sec. 825.215(f).

Where an employee is reinstated to the same position or a
position which is equivalent to the position held before FMLA
leave, the employee has not suffered an adverse employment
action. In this case, it is undisputed that Plaintiff Bozarth
received the same pay and benefits as before her FMLA leave, and
was classified as a "General Clerical" employee in the same
Warranty Administration/Payroll Department, as before her FMLA
leave. Plaintiff contends that another employee performed the
job duties assigned to Plaintiff before her FMLA leave. The
Court takes Plaintiff's claim to be that Plaintiff's "new"
position was not equivalent to her former position with the
Warranty Administration/Payroll Department.

The determination of whether the position to which Plaintiff
Bozarth returned was "equivalent" to the position Plaintiff held
before the FMLA is a mixed question of law and fact. After
Plaintiff's FMLA leave, Plaintiff's work area was in a different
room, and Plaintiff was assigned to learn cashier duties,
including "batching out" the register. There is uncontradicted
testimony that other employees were cross-trained to assist when
needed. There is also uncontradicted testimony that Defendant's
plan for the Warranty Administration/Payroll Department was to
include three employees, and Plaintiff's duties would include
warranty administration (Cruea Deposition, p. 14, l. 13-19).
Before Plaintiff's FMLA leave, Plaintiff Bozarth's time was split
between assistance with warranty administration and payroll.
Defendant hired an employee experienced in warranty
administration when the person trained to cover Plaintiff's
absence resigned. The FMLA permits an employer to restructure a

25

job to accommodate an employee's absence. The FMLA does not require that the employee be returned to the exact position as before an FMLA leave. See Brown v. J.C. Penney Corp., 924 F.Supp. 1158, 1163 (S.D. Fla. 1996).

After consideration, the Court concludes that any difference in Plaintiff's position after her return from the FMLA leave was a de minimis change. The Court grants Defendant's Motion for Summary Judgment as to Count II. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment is **granted.** The Clerk of Court shall enter a final judgment in favor of Defendant Sunshine Chevrolet-Oldsmobile of Tarpon Springs, Inc. d/b/a Ferman BMW against Plaintiff Jessica Bozarth n/k/a Jessica Pennington.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this /9 th day of March, 2010.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record